|  | |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **DISTRICT OF NEVADA** | |
| SAM WRIGHT and BOULDER CITY TOY BOX,<br><br>    Plaintiffs<br><br>v.<br><br>MECUM AUCTIONS INC.,<br><br>    Defendant | Case No.: 2:17-cv-02217-APG-NJK<br><br>**Order Denying Motion for Summary Judgment**<br><br>[ECF No. 30] |

This suit arises out of alleged agreements surrounding the auction of 131 cars. Non-party Ron MacWhorter owned a collection of cars that he was hoping to sell. Plaintiff Sam Wright introduced MacWhorter to representatives of defendant Mecum Auction, Inc. MacWhorter signed listing contracts with Mecum for Mecum to auction the cars on his behalf. However, the cars did not have marketable title. Plaintiffs Sam Wright and Boulder City Toy Box (BCTB) provided services to obtain marketable title in BCTB's name for the cars that were then sold at the auction. The crux of the parties' dispute is what their agreement was, if any, regarding the payment for these services. The plaintiffs assert they were entitled to a 6% commission along with repayment of costs of procuring title. Mecum and MacWhorter contend there was no such agreement.

The plaintiffs sue for breach of contract, breach of the implied covenant of good faith and fair dealing, and "tort in bad faith breach." ECF No. 1. The plaintiffs contend Mecum paid MacWhorter the auction proceeds instead of paying BCTB (who would take its commission and pay the balance to MacWhorter), thus depriving the plaintiffs of their commission for the services they performed in procuring marketable title for the auctioned cars. They also allege

Mecum promised to pay the plaintiffs for the costs incurred in titling the cars but has not done so.

Mecum moves for summary judgment, arguing that Mecum and the plaintiffs could not have agreed to divert the sale proceeds to BCTB because that would have modified the contract between Mecum and MacWhorter (which required Mecum to pay the sale proceeds to MacWhorter) without MacWhorter's consent and without additional consideration. Mecum contends that because there was no valid and enforceable contract, the plaintiffs' other claims also fail as a matter of law.

The plaintiffs respond that there is evidence that BCTB entered into auction listing contracts with Mecum to sell the cars with titles in BCTB's name. They argue they undertook work to obtain marketable title so the auction could go forward. They also contend the evidence shows Mecum agreed to pay the plaintiffs the costs of obtaining marketable title for the cars because Mecum made two payments toward that obligation.

**I. ANALYSIS**

    **A. Jurisdiction**

I previously advised Mecum that as the removing defendant it bore the burden of establishing that subject matter jurisdiction exists before final judgment would be entered. ECF No. 17 (stating "the defendant remains responsible for showing diversity jurisdiction actually exists before judgment is entered"). Mecum has not presented any evidence to prove the citizenship of each member of plaintiff BCTB at the time the complaint was filed and at the time of removal. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (stating that "an LLC is a citizen of every state of which its owners/members are citizens"); *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002)

(stating diversity jurisdiction is determined at the time the complaint is filed and when the action is removed). I cannot discern whether I have jurisdiction to enter judgment, so I deny Mecum's motion. However, because the parties have briefed the issues, and because I nevertheless would deny Mecum's motion on the merits, I address the issues raised in the parties' briefs.

**B. Merits**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

Under Nevada law, "the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). For a valid

contract to exist, there must be "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "Parties may mutually consent to enter into a valid agreement to modify a former contract." *Clark Cty. Sports Enterprises, Inc. v. City of Las Vegas*, 606 P.2d 171, 175 (Nev. 1980). Parol evidence and evidence of conduct consistent with the asserted modification "may be used to show an agreement to modify." *Id.* Along with mutual consent to the modification, there must also be "additional consideration . . . to . . . modify the existing contract between the parties." *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 703 (Nev. 2006) (en banc). Whether a contract exists is a question of fact. *May*, 119 P.3d at 1257.

Viewing the evidence in the light most favorable to the plaintiffs as the non-moving parties, a reasonable jury could find the agreement to pay the plaintiffs' costs existed and that MacWhorter agreed to it. Both Wright and a Mecum employee aver that an agreement to pay the plaintiffs' costs existed. ECF Nos. 30-4 at 8; 33 at 3. Mecum's Rule 30(b)(6) deponent, Gus Kozarzewski, was asked how Wright and BCTB would be paid for the services performed. ECF No. 30-4 at 8. He testified "[w]hatever the title services that we're charging Mr. Wright or [BCTB] would be paid by Mr. MacWhorter via Mecum Auctions." *Id.* It is reasonable to infer from this testimony that MacWhorter agreed to this arrangement, otherwise Mecum would breach its contract with MacWhorter by deducting from his account funds to be paid to the plaintiffs. Additionally, Wright avers that Mecum has already made two payments toward these expenses. ECF No. 33 at 5. A reasonable jury could find that conduct consistent with the alleged modification shows all parties agreed to the arrangement.

As to the contractual promise to pay BCTB the auction proceeds first so it could collect its commission, Mecum admitted in its motion that Wright testified MacWhorter verbally agreed

4

to that arrangement. ECF No. 30 at 9; *see also* ECF No. 30-2 at 6 (Wright's testimony). However, Mecum did not raise the possibility that the plaintiffs would not be able to admit this statement into evidence until its reply brief, thus depriving the plaintiffs of the opportunity to respond. ECF No. 35 at 7. I therefore decline to consider this argument. *See Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008).

      A reasonable jury could conclude there was consideration for these promises. Both Mecum and MacWhorter would financially benefit from more cars selling with marketable title at the auction. Because a reasonable jury could find that the agreements existed, that MacWhorter consented to the modification of his contract with Mecum, and that consideration supported the alleged modification, I deny Mecum's motion.

      Although I deny Mecum's motion, I will allow one final round of summary judgment to allow Mecum to (1) establish subject matter jurisdiction exists in this court and (2) argue that the plaintiffs will not be able to produce evidence in a form admissible at trial that MacWhorter consented to the 6% commission arrangement. Alternatively, the parties may file the proposed joint pretrial order. If Mecum does not move for summary judgment again and this matter goes to trial, Mecum will remain responsible for establishing at trial that subject matter jurisdiction exists in this court. If it does not, I will remand this case.

## II. CONCLUSION

      IT IS THEREFORE ORDERED that defendant Mecum Auctions, Inc.'s motion for summary judgment **(ECF No. 30) is DENIED**.

      IT IS FURTHER ORDERED that on or before April 12, 2019, defendant Mecum Auctions, Inc. shall file a second motion for summary judgment that may raise only the following two issues: (1) that diversity jurisdiction exists in this case and (2) that the plaintiffs

cannot show through admissible evidence that MacWhorter agreed to modify his contract with Mecum such that Mecum would pay BCTB the auction proceeds, and then BCTB would take its commission and pay the remainder to MacWhorter.

IT IS FURTHER ORDERED that if defendant Mecum Auctions, Inc. does not file a second motion for summary judgment by April 12, 2019, the parties shall file a proposed joint pretrial order on or before April 26, 2019. If defendant Mecum Auctions, Inc. files a second motion for summary judgment, the proposed joint pretrial order will be due 30 days from the date I rule on that motion.

DATED this 26th day of March, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE